CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
01/02/2019
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LANCE DEREK HICKS,<br><br>*Defendant.* | CASE NO. 6:18-cr-00009-2<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Hicks's motion to suppress. (Dkt. 23). Defendant has been indicted on one count of conspiracy to distribute methamphetamine. (Dkt. 13). Defendant seeks to exclude from trial two sets of incriminating statements he made to law enforcement following his arrest on January 13, 2017, along with all the evidentiary fruit of these statements. Defendant contends that law enforcement failed to advise him of his Fifth Amendment rights prior to questioning him, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

Having considered the full record, including evidence provided at a suppression hearing,[1] the Court concludes that the Government has established by a preponderance of the evidence that *Miranda* warnings were administered to Defendant prior to each interview on January 13, 2017. Accordingly, the motion to suppress will be denied, and Defendant's post-arrest statements, and all attendant evidentiary fruit, will be admissible at trial.

---

[1] Defendant Hicks originally moved to suppress the same incriminating statements at issue here in a prior criminal proceeding, *United States v. Hicks*, Case No. 6:17-cr-00002-2. The parties briefed the issue, and the Court held a suppression hearing. However, before ruling on the suppression motion, this Court dismissed the indictment without prejudice on unrelated grounds. Upon being indicted in the present proceeding, Defendant filed an identical motion to suppress, attaching the transcript of the prior suppression hearing to the motion. (Dkt. 23-1). The Court notified the parties that, absent objections, it would rule on the present motion to suppress using the briefing and evidence submitted in connection with the suppression motion in the prior proceeding. (Dkt. 70). The parties did not object. (Dkt. 74).

## I. LEGAL STANDARD

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amend. V. To safeguard this right, the Supreme Court "adopted a series of procedural rules that must be followed during custodial interrogations" in *Miranda v. Arizona*, 384 U.S. 436 (1966). *United States v. Jefferson*, 562 F.Supp.2d 707, 712 (E.D. Va. 2008). "A confession made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda*[,] . . . and the defendant knowingly, intelligently, and voluntarily waives those rights." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017).

Generally, the defendant moving to suppress evidence bears the burden of proof. *See United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). "Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence." *United States v. Gualtero*, 62 F.Supp.3d 479, 482 (E.D. Va. 2014) (citing *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974)). Thus, when a defendant moves to suppress his statements on the basis that the statements were obtained in violation of *Miranda*, "the government bears the burden of establishing by a preponderance of the evidence that the statement was not obtained in violation of *Miranda*." *United States v. Jones*, No. 3:17-cr-71, 2018 WL 935396, at *19 (E.D. Va. Feb. 16, 2018) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

## II. FACTUAL FINDINGS

"Motions to suppress fall into the class of issues that are decided by the court and not the jury," and "[i]n the course of deciding a motion to suppress, the district court may make findings of fact." *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005). *See also* Fed. R. Crim.

P. 12(d) ("When factual issues are involved in deciding a [pretrial] motion, the court must state its essential findings on the record."). Having considered the full record, including evidence presented at a suppression hearing, the Court makes the following factual findings.

At some time between midnight and 2:00 AM on January 13, 2017, sheriff's deputies in Amherst County, Virginia conducted a traffic stop in the parking lot of the Executive Inn in Madison Heights, Virginia.[2] (Dkt. 23-1 at 7–8, 63). Defendant Lance Hicks, the driver of the stopped vehicle, was placed under arrest and handcuffed. (*Id*. at 63). At approximately 2:00 AM, Brandon Hurt, a narcotics investigator for the Amherst County Sheriff's Office, received a telephone call from Deputy Malott, one of the deputies who conducted the traffic stop. (*Id*. at 7–8). Deputy Malott informed Hurt that officers had apprehended Hicks and one of his associates, both of whom were investigative targets of Hurt's. (*Id*. at 8). Upon arriving at the Executive Inn, Hurt found Hicks standing in handcuffs with two deputies in front of the stopped vehicle. (*Id*.). Hurt asked Deputy Malott whether *Miranda* warnings had been administered to either individual. (*Id*.). Deputy Malott replied that *Miranda* warnings had not been administered to either individual, and that Deputy Malott had not conversed with either individual. (*Id*.).

Hurt asked Hicks to step away from his associate, and Hicks complied. (*Id*. at 8–9). Hurt informed Hicks that, since Hicks "was not free to leave," Hurt would advise him of his *Miranda*

---

[2] Defendant does not contest the validity of the initial traffic stop. (Dkt. 23-1 at 4). The Government presented evidence that Defendant was charged with driving on a suspended license and failure to use a turn signal in connection with the January 13, 2017 traffic stop. (Dkt. 76 at 4–5). Amherst County general district court records show that Defendant pleaded guilty to driving on a suspended license on April 20, 2017, (*id*. at 4), and that Defendant was tried and found guilty of failure to use a turn signal on the same day. (*Id*. at 5). There is no evidence or argument before the Court that the January 13, 2017 traffic stop violated the Fourth Amendment.

3

rights. (*Id*. at 8). Hurt then read Hicks his *Miranda* rights from a card Hurt keeps in his wallet.[3] (*Id*. at 9). Hurt asked whether Hicks understood what Hurt had read to him, and Hicks stated that he understood. (*Id*.). Hurt asked whether Hicks was willing to speak with him and answer questions, and Hicks replied that he was willing to do so. Hicks proceeded to make certain incriminating statements. (*Id*. at 10–11; dkt. 76-2 at 4).

Following his interview with Hicks and Hicks's associate, Hurt sought a warrant to search Room 125 of the Executive Inn, where the two men stated they had been staying.[4] (Dkt. 23-1 at 11, 20–21; dkt. 76-2 at 2–4). The affidavit Hurt submitted to demonstrate probable cause for a warrant did not mention that Hurt had administered a *Miranda* warning to Hicks prior to interviewing him, although it is Hurt's common practice to include these details in such affidavits. (Dkt. 23-1 at 20–21; dkt. 76-2 at 2–3). The state court issued a warrant authorizing the search of Room 125. (Dkt. 23-1 at 20). In executing the warrant, officers found a black box in Room 125. (*Id*. at 11–12, 64). At Hurt's request, Hicks opened the box using a combination. (*Id*.). The box contained several cell phones and a "white powder substance" later determined to be methamphetamine. (*Id*. at 11–12, 22).

After the search of Room 125 at the Executive Inn, a deputy transported Hicks to the Amherst County Sheriff's Office, where Hicks was eventually placed in "Interview Room 3." (*Id*. at 12, 51, 64–65). Interview Room 3 is equipped with an audio and visual recording device. (*Id*. at 13–14, 50). The device is operated by plugging a USB drive in, powering on the device, and pressing "record." (*Id*. at 50–51). At least one interview conducted in Interview Room 3 in 2016 failed to record due to a technical malfunction, but Captain John Grieser, who oversees

---

[3] This is the first crucial fact Defendant disputes. As explained in Section III of this opinion, the Court finds that the Government has proven by a preponderance of the evidence that Hicks was advised of his *Miranda* rights prior to speaking with Hurt at the Executive Inn.

[4] Defendant has not challenged the validity or execution of the search warrant.

information technology for the Amherst County Sheriff's Office, believed that Interview Room 3 was functional as of January 2017. (*Id*. at 51, 52–54).

Hurt and Jason Thompson, a special agent with the Drug Enforcement Administration (DEA), joined Hicks in Interview Room 3. (*Id*. at 34). Hurt plugged in a USB drive, powered the recording device on, and pressed "record." (*Id*. at 13–14). Agent Thompson advised Hicks of his *Miranda* rights by reading from a preprinted "DEA 13A" card he keeps in his wallet.[5] (*Id*. at 42; dkt. 76-2 at 10). The "DEA 13A" card provides the text for an oral *Miranda* rights warning. (Dkt. 23-1 at 32–33; dkt. 76-2 at 10). Hicks stated that he understood what Thompson had read to him and that he was willing to speak with Hurt and Thompson. (Dkt. 23-1 at 36). During the course of the ensuing interview, Hicks made certain incriminating statements. (*Id*. at 15, 37–38; dkt. 76-2 at 5–6). At no point during the interview did Hicks express a desire to stop talking, consult a lawyer, or end the interview. (Dkt. 23-1 at 15). Agent Thompson took notes during the interview, and these notes state that Hicks was advised of his *Miranda* rights at 12:29 PM on January 13, 2017. (*Id*. at 46–47).

After finishing the interview, Hurt stopped the recording but noticed that the "recording box . . . didn't change" in the usual manner. (*Id*. at 15). Within an hour, Hurt telephoned Captain Grieser and inquired whether he had erred in operating the recording equipment. (*Id*. at 25–26, 49). Based on Hurt's description of how he had operated the recording equipment, Grieser stated that Hurt had operated the equipment correctly. (*Id*. at 15). At this point, Hurt was under the impression that the interview with Hicks had recorded properly. (*Id*. at 23).

On January 17, 2017—three days after the two interviews with Hicks—Thompson

---

[5] This is the second crucial fact Defendant disputes. As explained in Section III of this opinion, the Court finds that the Government has proven by a preponderance of the evidence that Hicks was advised of his *Miranda* rights prior to speaking with Hurt and Thompson at the Amherst County Sheriff's Office.

5

compiled a Report of Investigation (ROI) describing the two interviews with Hicks at the Executive Inn and the Amherst County Sheriff's Office. (*Id*. at 28, 45; dkt. 76-2 at 4). Although it is common practice to indicate in an ROI whether a suspect was advised of his *Miranda* rights, Thompson did not state in the ROI that Hurt advised Hicks of his *Miranda* rights prior to the interview at the Executive Inn. (Dkt. 23-1 at 10). However, Thompson did state in the ROI that "Thompson read [Hicks] his *Miranda* warnings" at 12:29 AM before the interview in Interview Room 3. (Dkt. 76-2 at 5 (italics added)). The ROI also stated that the interview at the sheriff's office had been recorded because, at the time Thompson compiled the ROI, Thompson believed the interview had properly recorded. (*Id*.; dkt. 23-1 at 36–37).

Within one week of January 13, 2017, but after January 17, 2017 (*i.e.*, the date Thompson compiled the ROI), Hurt and Captain Grieser determined that the interview with Hicks in Interview Room 3 had not in fact recorded due to a technical malfunction with the recording equipment's control panel module. (Dkt. 23-1 at 52, 56–57). Hurt and Grieser made several attempts to recover an audio or visual recording of the interview but were not able to recover either. (*Id*. at 60–61). On December 5, 2017, defense counsel requested all audio and visual recordings of the officers' interviews with Hicks. (*Id*. at 48). On the same day, Hurt corrected the ROI to indicate that the officers' interview with Hicks in Interview Room 3 had not recorded due to a technical malfunction. (Dkt. 76-2 at 8–9).

Hicks has a criminal record, including two felony drug convictions in 2015 and 2016, and a petty larceny conviction in 2010. (Dkt. 23-1 at 66–67). Although Hicks disputes that Hurt and Thompson advised him of his *Miranda* rights before either interview on January 13, 2017, he testified at the suppression hearing that the officers did not "twist [his] arm . . . to make [him] talk." (*Id*. at 67).

## III. ANALYSIS

"Concerns under *Miranda* only arise when a defendant is in custody and subjected to interrogation." *Giddins,* 858 F.3d at 879 (citing *Montejo v. Louisiana*, 556 U.S. 778, 794 (2009)). Here, there is no dispute that both of the January 13, 2017 interviews were instances of custodial interrogation such that law enforcement was required to administer *Miranda* warnings prior to questioning Hicks. The only remaining question is whether law enforcement did in fact administer *Miranda* warnings before interviewing Hicks.

Hicks's account that he was never advised of his *Miranda* rights, (dkt. 23-1 at 63–65), is directly contrary to Hurt's and Thompson's accounts that *Miranda* warnings were administered before both interviews on January 13, 2017. (*Id*. at 9, 35–36). Since neither interview was recorded, there is no extrinsic evidence the Court can consult to definitively verify whether Hurt and Thompson administered *Miranda* warnings. Thus, the Court is left to assess the relative credibility of Hicks, Hurt, and Thompson.

"At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Ashley*, No. 4:10-cr-88, 2011 WL 2559989, at *4 (E.D. Va. June 27, 2011) (quoting *United States v. McKneely*, 6 F.3d 1447, 1452–53 (10th Cir. 1993)). A district court has wide discretion to assess the credibility of witnesses. The Fourth Circuit maintains that trial courts' "determinations regarding the credibility of a witness" are entitled to "due deference." *United States v. Springer*, 715 F.3d 535, 547 (4th Cir. 2013). Motions to suppress often hinge on a district court's assessments of testifying witnesses' credibility. *See, e.g., United States v. Massey*, 257 F. App'x 662, 664 (4th Cir. 2007) (declining to "second-guess the district court's

7

credibility determinations" where district court decided *Miranda* warnings had been administered based only on a finding that law enforcement witnesses were more credible than defendant); *United States v. Coker*, 39 F. App'x 939, 940 (4th Cir. 2002) (same).

For several reasons, the Court finds Hurt and Thompson more credible than Hicks. First, Hurt and Thompson are both experienced law enforcement officers. Hurt has approximately ten years of experience with the Amherst County Sheriff's Department, (dkt. 23-1 at 22), and Thompson has approximately fifteen years of experience as a DEA agent. (*Id.* at 42). Both Hurt and Thompson testified to having knowledge of *Miranda*'s requirements and experience with administering *Miranda* warnings. (*Id.* at 9, 19–20, 35). Second, Hurt and Thompson provided consistent testimony that Thompson administered *Miranda* warnings from a DEA 13A card he keeps in his wallet before the interview at the sheriff's office. (*Id.* at 14–15, 35–36). Since Thompson was not present at the Executive Inn, he was not in a position to corroborate Hurt's testimony that Hurt administered *Miranda* warnings prior to his interview with Hicks outside the Inn.[6] But, for reasons discussed below, the Court finds Hurt more credible on this point than Hicks. Hurt and Thompson testified under oath to having total recall of administering *Miranda* warnings before both interviews. (*Id.* at 21–22, 39).

Third, Thompson stated in contemporaneous notes and an ROI compiled three days after the January 13, 2017 interviews that he administered *Miranda* warnings to Hicks prior to the sheriff's office interview. (*Id.* at 46–47; dkt. 76-2 at 5). The temporal proximity of this

---

[6] At least one portion of Thompson's testimony suggests Thompson was aware before the second interview that Hurt had already administered a *Miranda* warning at the Executive Inn, and therefore somewhat corroborates Hurt's testimony that he advised Hicks of his Fifth Amendment rights prior to the interview outside the Inn. When asked why he felt the need to advise Hicks of his *Miranda* rights before the second interview, Thompson stated that it is his "common practice to do that, even if someone has been advised by someone else, just to ensure that it was done. I just repeat and do it myself so I can document that." (Dkt. 76-2 at 35).

8

documentation to the January 13, 2017 sheriff's office interview lends further credibility to Thompson's testimony at the suppression hearing that he recalled administering *Miranda* warnings before the sheriff's office interview. (Dkt. 23-1 at 35, 39). The Court acknowledges that the ROI fails to state that Hurt administered *Miranda* warnings before his interview with Hicks outside of the Executive Inn, despite Hurt's testimony that it is "common practice" to include details about *Miranda* warnings in ROIs. (*Id*. at 10; dkt. 76-2 at 4). However, Thompson, not Hurt, drafted the ROI. (Dkt. 23-1 at 28). Thompson's failure to state in the ROI that Hurt administered a *Miranda* warning before the Executive Inn interview was likely an oversight on Thompson's part, given that Thompson was not present for the Executive Inn interview and did not witness Hurt administer *Miranda* warnings. Additionally, Hurt's credibility is bolstered by his candor with the Court that he made a "mistake" by failing to ensure this information was included in the ROI. (*Id*. at 10).

Fourth, although "nothing in the testimony" Hicks provided was necessarily "implausible or [internally] inconsistent," the Court notes that, as a criminal defendant, Hicks "did have a strong motive to exculpate himself." *United States v. Williams*, No. Crim. L-00-0330, 2001 WL 245524, at *6 (D. Md. Feb. 27, 2001). Moreover, Hicks testified under oath that he has three prior criminal convictions, including two felony drug convictions and one petty larceny conviction. (Dkt. 23-1 at 66–67). Prior convictions, particularly felony convictions and offenses involving dishonest acts, have significant bearing on a witness's credibility. *See United States v. Greene*, 704 F.3d 298, 312 (4th Cir. 2013) (noting that jury could consider witness's "numerous felony convictions" when evaluating his credibility); *United States v. Clenney,* No. 1:09-cr-135, 2009 WL 10677501, at *3 (E.D. Va. July 15, 2009) (rejecting defendant's argument that district court improperly considered his criminal record at suppression hearing because the Federal Rules

9

of Evidence "do not apply at a suppression hearing" and because defendant "fail[ed] to object" to "this line of questioning" at the hearing).

Given Hicks's exculpatory motives and criminal record, Thompson's contemporaneous notes and ROI, and Hurt's and Thompson's experience, consistent testimony, and candor, the Court finds Hurt and Thompson more credible than Hicks. The Court concludes, on the basis of Hurt's and Thompson's testimony, (dkt. 23-1), and supporting ROI documentation, (dkt. 76-2 at 5), that the Government has proven by a preponderance of the evidence that Hicks received *Miranda* warnings before both of the January 13, 2017 interviews. *Gualtero*, 62 F.Supp.3d at 482. Accordingly, the Court will deny the motion to suppress incriminating statements made during the interviews and all attendant evidentiary fruit.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress will be denied. An accompanying order will issue.

Entered this __2nd__ day of January, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE